**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0213-18T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KEYSHAUN WIGGINS,

    Defendant-Appellant.

_____

Submitted May 4, 2020 – Decided July 2, 2020

Before Judges Fasciale and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 17-04-0269.

Joseph E. Krakora, Public Defender, attorney for appellant (Lauren R. Jackson, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Ednin D. Martinez, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Keyshaun Wiggins and two codefendants were indicted in connection with a robbery of a purported drug dealer who was shot and killed during the crime.[1] Both codefendants gave statements to law enforcement authorities implicating defendant as a participant in planning and carrying out the robbery—committed after all three men traveled from Jersey City to the victim's residence in Hoboken—and as the shooter.[2] They later pleaded guilty to first-degree armed robbery, N.J.S.A. 2C:15-1(a)(1), and agreed to testify against defendant. One codefendant told police the location where defendant discarded the handgun that was eventually matched to the bullet recovered from the victim's body.

After the trial court denied his motions to suppress his codefendants' statements and the handgun, defendant pleaded guilty to an amended charge of

---

[1] Defendant was indicted for first-degree murder, N.J.S.A. 2C:11-3(a)(1) (count one); first-degree murder during commission of a crime, N.J.S.A. 2C:11-3(a)(3) (counts three and five); first-degree armed robbery, N.J.S.A. 2C:15-1(a)(1) (count seven); second-degree armed burglary, N.J.S.A. 2C:18-2(a)(1) (count nine); second-degree conspiracy to commit burglary, N.J.S.A. 2C:5-2 (count eleven); first-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 (count twelve); second-degree possession of weapon for unlawful purpose – firearm, N.J.S.A. 2C:39-4(a)(1) (count fifteen); second-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1) (count seventeen); and third-degree hindrance of evidence N.J.S.A. 2C:29-3(a)(3) (count nineteen).

[2] The codefendants' statements are not included in the record. The trial court synopsized their statements in its oral decision denying defendant's motions.

first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1). He was sentenced in accordance with the plea agreement to a prison term of twenty years subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. He appeals from the conviction and sentence, arguing:

> POINT ONE
>
> THE TRIAL [COURT] ERRED IN DENYING DEFENDANT'S MOTION TO SU[P]PRESS PHYSICAL EVIDENCE WITHOUT CONDUCTING AN EVIDENTIARY HEARING.
>
> POINT TWO
>
> THE SENTENCE IS EXCESSIVE AND SHOULD BE REDUCED BECAUSE THE [COURT] REJECTED RELEVANT MITIGATING FACTORS AND IMPROPERLY OUTWEIGHED THE AGGRAVATING FACTORS.

Unpersuaded, we affirm.

In reviewing a trial court's suppression decision, its findings should be upheld if they are supported by sufficient competent evidence in the record, State v. Minitee, 210 N.J. 307, 317 (2012), and should only be disturbed if they were "so clearly mistaken 'that the interests of justice demand intervention and correction,'" State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). The trial court's application of its factual findings to

the law, however, is subject to our plenary review. See, e.g., State v. Gamble, 218 N.J. 412, 425 (2014).

Defendant argues the trial court erred in denying the motion to suppress without an evidentiary hearing. He claims the codefendants' statements were procured by coercive measures, and that he has "standing to have these statements further explored during an evidentiary hearing." He argues that because "[t]he only way . . . the handgun was recovered was through a description provided by [one codefendant], which could have been proven to be involuntary if an evidentiary hearing occurred," the handgun, recovered as the product of those involuntary statements, should be suppressed.

Defendant, however, does not have standing to "vicariously assert that another's right against self-incrimination has been violated." State v. Baum, 199 N.J. 407, 417 (2009). Our Supreme Court held that rights granted by the Fifth Amendment and its "state-based counterpart found in our common law," ibid., were "entirely personal," id. at 418. In concluding there was no reason "to expand the protections against self-incrimination so as to permit a third party . . . to assert a violation vicariously," id. at 420, the Court, citing to Miranda v. Arizona, 384 U.S. 436 (1966), reasoned:

> As with the Miranda warnings, the purpose advanced by our statute and rule is to protect the individual's right

A-0213-18T2

against self-incrimination rather than to advance the goals of another who tries to claim the benefit of that purely personal right.  Were we to part company with the federal courts on this issue and allow defendant to vicariously assert [his codefendant's] right against self-incrimination, we would adopt an approach that would, in effect, read <u>Miranda</u> in a manner so inconsistent with the clear guidance of our federal counterparts as to be inappropriate.  As we have recognized, the United States Supreme Court "has advised against extending <u>Miranda</u> unless the holding 'is in harmony with <u>Miranda</u>'s underlying principles.'" <u>State v. Boretsky</u>, 186 N.J. 271, 278 (2006).

[<u>Id.</u> at 419.]

We thus reject defendant's argument that he has standing to contest his codefendants' statements.

Defendant also lacks standing to challenge the seizure of the handgun which, as the trial court found, was abandoned.  A criminal defendant has standing to move to suppress evidence from a claimed unreasonable search or seizure "if he has a proprietary, possessory or participatory interest in either the place searched or the property seized."  <u>State v. Alston</u>, 88 N.J. 211, 228 (1981). Our Supreme Court, however, has "carved out 'a narrow exception to our automatic standing rule,'" <u>State v. Carvajal</u>, 202 N.J. 214, 223 (2010) (quoting <u>State v. Johnson</u>, 193 N.J. 528, 549 (2008)), and held "a defendant will not have standing to object to the search or seizure of abandoned property," <u>ibid.</u> (quoting

5

Johnson, 193 N.J. at 548-49).  "For the purposes of standing, property is abandoned when a person, who has control or dominion over property, knowingly and voluntarily relinquishes any possessory or ownership interest in the property and when there are no other apparent or known owners of the property."  Johnson, 193 N.J. at 549; see also Carvajal, 202 N.J. at 223.

The trial court deemed an evidentiary hearing unnecessary because the proofs presented by the State proved the handgun was abandoned.  Besides the codefendants' statements that defendant possessed the handgun and shot at the victim during the robbery, and that defendant discarded the weapon in bushes near a Dunkin' Donuts as all three fled, the trial court noted police retrieved the weapon from those bushes, and that video footage "depict[ed] all three men running . . . [and defendant] tossing the gun into the bushes."  From the codefendants' statements and the video footage, the trial court found the handgun was "discarded . . . in a public place located a significant distance from both Jersey City and Springfield, Massachusetts," where defendant was apprehended by the United States Marshals Service Regional Fugitive Task Force twenty-four days after the shooting, after defendant failed to appear on the date on which his counsel had arranged for defendant to voluntarily surrender.

From these supported facts, we agree the handgun was abandoned. In an obvious attempt to obtain separation from what ultimately was shown by ballistics testing to be the murder weapon, it was discarded in a location in which neither defendant nor his codefendants had any interest. Neither defendant nor any codefendant attempted to later retrieve the weapon. Indeed, defendant traveled to and stayed in Massachusetts.

Defendant contends the court erred by deciding the suppression motion without an evidentiary hearing because he denied either possessing the gun or discarding it. Those disputed facts, however, do not mandate an evidentiary hearing.

As we recognized in State v. Green, 346 N.J. Super. 87, 90-91 (App. Div. 2001) (citations omitted), Rule 3:5-7(c)

> provides that the filing of a motion by a defendant asserting that evidence to be used against him was seized in a warrantless search triggers a requirement that "the State shall, within fifteen days of the filing of the motion, file a brief, including a statement of facts as it alleges them to be, and the movant shall file a brief and counter statement of facts no later than three days before the hearing." It is only when the defendant's counter statement places material facts in dispute that an evidentiary hearing is required. The mere allegation of a warrantless search, with the attendant burden of proof on the State to justify same, does not place material issues in dispute, nor does defendant's

assertion that he denies the truth of the State's allegations.

The material issue in this case is undisputed: The handgun was abandoned. Whether it was defendant or a codefendant, that person "knowingly and voluntarily relinquishe[d] any possessory or ownership interest" in the handgun. Johnson, 193 N.J. at 549. As such, that person does not have standing to contest the seizure of the handgun. The trial court properly denied defendant's motion to suppress without an evidentiary hearing.

In arguing his sentence was excessive, defendant contends the trial court erred in rejecting his proffered mitigating factors and in weighing the factors it found: aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (risk of reoffense), and nine, N.J.S.A. 2C:44-1(a)(9) (need to deter), substantially outweighed mitigating factor seven, N.J.S.A. 2C:44-1(b)(7) (lack of prior juvenile or criminal history). The court found defendant was "at high risk of committing another offense"; weighed aggravating factor nine "heavily"; and accorded "minimal weight" to mitigating factor seven.

Our review of a sentence is narrow. State v. Miller, 205 N.J. 109, 127 (2011). Our duty is to assure that the aggravating and mitigating factors found by the court are supported by "competent credible evidence in the record." Ibid. (quoting State v. Bieniek, 200 N.J. 601, 608 (2010)). As directed by the Court,

we must (1) "require that an exercise of discretion be based upon findings of fact that are grounded in competent, reasonably credible evidence"; (2) "require that the factfinder apply correct legal principles in exercising its discretion"; and (3) modify sentences only "when the application of the facts to the law is such a clear error of judgment that it shocks the judicial conscience." State v. Roth, 95 N.J. 334, 363-64 (1984). Applying a deferential standard of review to the court's sentencing determination, we find no error in the court's identification and balance of the "aggravating and mitigating factors that are supported by competent credible evidence in the record." State v. Grate, 220 N.J. 317, 337 (2015) (quoting State v. Lawless, 214 N.J. 594, 606 (2013)).

The trial court fully complied with Rule 3:21-4(g) pointing to specific facts supporting its determination of the aggravating and mitigating factors. N.J.S.A. 2C:44-1(a)(3) provides that a trial court must consider "[t]he risk that the defendant will commit another offense" when making its sentencing determination. "A court's findings assessing . . . the predictive assessment of chances of recidivism . . . involve determinations that go beyond the simple finding of a criminal history and include an evaluation and judgment about the individual in light of his or her history." State v. Thomas, 188 N.J. 137, 153 (2006). Although a trial court is obliged to consider all factors when

determining whether a defendant runs a risk of reoffending, it is not required to give one such factor controlling weight over the others. See id. at 153-54.

The trial court considered defendant's nine prior contacts with the Family Part, resulting in a successful diversion for simple assault and four adjudications for two thefts, a burglary and another robbery which the court found to be very similar to the instant crime. He parsed the timetable for those adjudications and also found defendant was "unable to abide by the terms of [his] probationary sentence which resulted in two violations of probation[.]" The court recognized defendant expressed "some level of regret or remorse, but based its finding of aggravating factor three on a "pattern of behavior" during which defendant "continued to offend[.]" The court's finding and the weight it ascribed to this factor are well supported.

A factor nine determination requires not only "a 'qualitative assessment' of the risk of recidivism, but 'also involve[s] determinations that go beyond the simple finding of a criminal history and include an evaluation and judgment about the individual in light of his or her history.'" State v. Fuentes, 217 N.J. 57, 78 (2014) (alteration in original) (quoting Thomas, 188 N.J. at 153). The trial court was obligated to point to specific facts supporting its conclusion that there was a need to deter both defendant and the general public from engaging

in future criminal behavior.  See id. at 78-79.  The court followed the Court's directive, highlighting defendant's planning and commission of an armed robbery for personal financial gain—a crime previously committed by defendant as a juvenile—that resulted in the death of yet another young person.

We discern no abuse in the court's assignment of minimal weight to mitigating factor seven.  The court properly balanced the fact that defendant had no adult record with his juvenile history.

We determine defendant's remaining arguments, including those pertaining to the court's rejection of other mitigating factors, to be without sufficient merit to warrant discussion, R. 2:11-3(e)(2), because the court well-explained its reasons at sentencing.

The court's thoughtful sentencing analysis, based on competent, credible evidence, resulted in the bargained-for twenty-year sentence for first-degree aggravated manslaughter.  The sentence does not shock the judicial conscience. See State v. Cassady, 198 N.J. 165, 180 (2009).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0213-18T2